UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

---

L.W., a minor,
b/n/f Addie Wilkins,

        Plaintiff,

v.                              Case No. 1:18-CV-2094-WCG-MPB

UNITED SKATES OF AMERICA, INC.,

        Defendant.

---

**DECISION AND ORDER**

---

        Plaintiff L.W., a minor, by her next friend Addie Wilkins, filed this action in Marion County Superior Court against Defendant United Skates of America, Inc., alleging that Defendant was negligent in its supervision of patrons skating at its facility on April 1, 2018, which resulted in Plaintiff falling and breaking her leg. Defendant removed this action to federal court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. Presently before the court is Defendant's motion for summary judgment and Plaintiff's motion to strike the affidavit of Armondo Blakely filed in support of Defendant's motion for summary judgment. For the following reasons, Plaintiff's motion will be denied, Defendant's motion will be granted, and the case will be dismissed.

**PRELIMINARY MATTERS**

        Before turning to Defendant's motion for summary judgment, the court must address Plaintiff's motion to strike the affidavit of Armondo Blakely, which Defendant submitted in support of its motion for summary judgment. Defendant contends that Blakely is its former employee who

was present during the occurrence giving rise to Plaintiff's claims and created an affidavit based on his personal knowledge of those events. Rule 56 of the Federal Rules of Civil Procedure allows the submission of affidavits in support of a party's factual position. Fed. R. Civ. P. 56(c)(1). An affidavit used in support of a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

There is no dispute that Blakely's statements are based on his first-hand knowledge of the events and that he is able to state what he did and what he observed. Instead, Plaintiff asserts that the affidavit should be stricken because Defendant produced and disclosed the affidavit one month after the liability discovery deadline. Rule 56 contemplates the creation of affidavits in support of a party's motion for summary judgment and does not require that the party produce the affidavit in advance of filing its motion. In this case, Defendant identified Blakely as an individual with knowledge of the circumstances of the incident in its response to Plaintiff's interrogatories. Dkt No. 32-5 at 4. That is all that is required.

Plaintiff also argues that the affidavit is improper because it was "strategically crafted to bolster the Defendant's Motion for Summary Judgment." Dkt. No. 32 at 2. The Seventh Circuit has foreclosed the argument that self-serving affidavits are improper, however. *See Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) ("As we have repeatedly emphasized over the past decade, the term 'self serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment."); *see also Widmanr v. Sun Chem. Corp.*, 772 F.3d 457, 459–60 (7th Cir. 2014) ("[S]elf-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment." (citations omitted)).

Finally, Plaintiff asserts that the court should strike the affidavit because Blakely's credibility is suspect. But any objections related to weight or credibility must be denied, as credibility concerns are not considered by the court at the summary judgment stage. *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for the factfinder." (citations omitted)). Instead, the court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). Blakely's affidavit is properly before this court. Accordingly, Plaintiff's motion to strike is denied. The court now turns to Defendant's motion for summary judgment.

## BACKGROUND

On April 1, 2018, Addie Wilkins, Plaintiff's mother, brought Plaintiff, Plaintiff's sister, and Wilkins' ex-boyfriend's daughter to Skateland Roller Skating rink in Indianapolis, Indiana to skate during a public skate session. They arrived at Skateland between 3:00 and 3:30 p.m., and Wilkins rented skates for the three girls. Plaintiff felt "wobbly" on her skates and held onto the inside wall as she skated to ensure that she would not fall or hit something if she lost her balance. Ex. 3, 13:5–7. Surveillance video of the date of the incident shows Plaintiff skating around the rink near the inside wall from 16:36:00 until her fall at 16:37:17. Plaintiff is first seen in the video with her arms out to her sides. Two male patrons can also be seen passing a device used to assist skaters with keeping their balance, or a "Skate Mate," between them. The video records the boys passing the device four times. At 16:37:10, Plaintiff skates around the center of the rink into the view of the surveillance camera. The two male patrons are then observed skating by Plaintiff when she

3

suddenly falls at 16:37:17. The boys were not holding or passing the Skate Mate near Plaintiff when she fell. Although Plaintiff claims that one of the two boys put his hands on her back and pushed her down from behind, the video only shows the boy skating near Plaintiff and does not show that the boy pushed her. At the time of the incident, there were approximately 25 to 30 people on the skating rink floor.

Prior to the start of the surveillance video and approximately two minutes before Plaintiff's fall, floor guard and disc jockey, Armondo Blakely, observed the two male patrons passing the Skate Mate and warned them to stop. Blakely then walked over to the center of the floor to change the music that was playing at the DJ booth. Blakely asserts that he did not observe the two male patrons passing the Skate Mate after he had warned them to stop.

Plaintiff's mother did not witness Plaintiff's fall because she was at the concession stand with her back turned away from the skating floor. Wilkins also had not observed Plaintiff skating at any point prior to the fall because she felt that the girls were "old enough to skate without supervision." Ex. 1, 17:22–25, 18:1–4.

Defendant posted several signs warning patrons of the risks inherent in skating and that they were skating "at your own risk" throughout Skateland, including at the front door, at the skate counter, on the DJ booth, in the café area, and near the customer lockers, and plays a two to three minute warning message over the loud speaker before each skating session begins. Defendant also employs floor guards who monitor the skating floor at all times and warn skaters about rule violations. All of Defendant's employees are required to attend mandatory quarterly training meetings. The last training meeting before the incident occurred on March 26, 2018. Although Skateland had scheduled three floor guards to be on staff on the date of the incident, at the time of

4

Plaintiff's fall, one floor guard was out on the floor and the others were taking their breaks or managing the skate counter. Defendant inspected the floor immediately after Plaintiff's fall and noted it was clean, dry, and free of debris. Plaintiff's roller skates were also examined and nothing was noted to be wrong with them.

**LEGAL STANDARD**

Summary judgment is appropriate when the movant shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "[A] factual dispute is 'genuine' for summary judgment purposes only when there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[A] 'metaphysical doubt' regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and 'the nonmovant fails to demonstrate a genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Id.* (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Where a video recording exists, and "[t]here are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened," a court must view "the facts in the light depicted by the videotape." *Id.* at 378–81. Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Plaintiff claims that Defendant failed to use reasonable care in supervising roller skaters in violation of Indiana Code § 34-31-6-1 and is liable for Plaintiff's injuries as a result. Indiana Code § 34-31-6-1 sets forth the requirements of skating rink operators and skaters. Section 1 of the statute, entitled "Duties of Operator," provides that an operator of a roller skating rink must

>(1) Post the:
>>(A) duties of roller skaters; and
>>(B) duties, obligations, and liabilities of the operator;
>
>as prescribed in this chapter in at least three (3) conspicuous locations in the roller skating rink.
>(2) Maintain the stability and legibility of all signs, symbols, and posted notices required by this chapter.
>(3) When the roller skating rink is open for a session, have at least one (1) floor supervisor on duty for every one hundred seventy-five (175) roller skaters who:

(A) has received appropriate training to carry out the floor supervisor's duties; and

(B) uses reasonable care in carrying out the floor supervisor's duties.

(4) Maintain the skating surface in proper and reasonably safe condition.

(5) Clean and inspect the skating surface before each skating session.

(6) Maintain in good and safe condition the railings, kickboards, risers, floors, areas open to roller skaters, and walls surrounding the skating surface.

(7) Maintain rental skates in good mechanical condition.

(8) Comply with all applicable state and local fire safety codes, building codes, and other safety codes applicable to a roller skating rink.

(9) Use reasonable care in supervising roller skaters to comply with the requirements of section 2 of this chapter.

Ind. Code § 34-31-6-1. The Indiana legislature recognized that skaters are considered to have knowledge of and assume the risks of roller skating, including falls, collisions, and incidental contact with other roller skaters. § 34-31-6-3. Consequently, if a skating rink owner or operator complies with the specific requirements enumerated in § 34-31-6-1, the operator is entitled to a complete defense against liability from roller skaters who experience falls, collisions, or other incidental contact that are risks inherent in roller skating. *See* § 34-31-6-4.

Of the nine requirements set forth in § 34-31-6-1, Plaintiff only argues that Defendant failed to use reasonable care in supervising roller skaters to comply with the duties of a roller skater, as defined in section 2 of that chapter. Section 2, entitled "Duties of Skater," provides that a roller skater must

(1) Maintain reasonable control of the roller skater's speed and course at all times.

(2) Heed all posted signs and warnings.

(3) Maintain a proper view to avoid other roller skaters and objects.

(4) Accept the responsibility for the following:

7

> (A) Knowing the range of the roller skater's ability to negotiate the intended direction of travel while on roller skates.
>
> (B) Skating within the limits of the roller skater's ability.
>
> (5) Refrain from acting in a manner that may cause or contribute to the injury of the roller skater or any other person.

Ind. Code § 34-31-6-2.

Plaintiff cites *St. Margaret Mercy Healthcare Centers, Inc. v. Poland*, 828 N.E.2d 396 (Ind. Ct. App. 2005), for the proposition that the issue of whether the skating rink operator used reasonable care in supervising skaters is a question of fact to be decided by the jury. But in this case, Plaintiff has failed to create a genuine dispute of material fact establishing that Defendant and its employees were unreasonable in supervising the roller skaters. Plaintiff claims that Defendant failed to use reasonable care because Blakely did not adequately monitor the boys after he told them to stop passing the Skate Mate. She claims that, even if Blakely warned the boys to stop passing the Skate Mate, the surveillance video captures the boys passing the Skate Mate four times before Plaintiff's fall. But the fact that the boys had been passing a Skate Mate before Plaintiff's fall does not create an issue of fact with respect to Defendant's compliance with § 34-31-6-1. Although Blakely went to change the music in the DJ station and did not see the boys pass the Skate Mate after he issued the warning, there is no dispute that the boys were not passing or holding the Skate Mate when Plaintiff fell. Despite Defendant's reasonable care in supervising the skaters, Plaintiff either fell as a result of her own imbalance or incidental contact with another skater. This is the type of risk inherent in roller skating that the Indiana legislature concluded skating rink operators would not be liable for so long as they comply with their duties as operators. *See* 34-31-6-4. Defendant

complied with the requirements of § 34-31-6-1 and has a complete defense from Plaintiff's claims. Accordingly, summary judgment in favor of Defendant is appropriate.

## CONCLUSION

For these reasons, Plaintiff's motion to strike the affidavit of Armondo Blakely (Dkt. No. 32) is **DENIED**, Defendant's motion for summary judgment (Dkt. No. 26) is **GRANTED**, and the case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   20th   day of August, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge[*]
United States District Court - WIED

---

[*] Of the Eastern District of Wisconsin, sitting by designation.